IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MADELYNN M. TAPKEN, a single person, | ) ) ) | No. 35473-3-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SPOKANE COUNTY, Public Works/Department of Engineering & Roads, a Municipal Corporation, | ) ) ) ) | |
| Appellant, | ) ) | |
| CONRAD MALINAK, a single person, et al, | ) ) ) | |
| Respondent. | ) | |

FEARING, J. — We address for the second time numerous issues arising from a September 28, 2011 motorcycle accident at the Waverly Y on a Spokane County rural road. We previously addressed many of the same issues after the trial court dismissed claims brought by passenger Madelynn Tapken and motorcycle operator Conrad Malinak against Spokane County for an unsafe road. We remanded for a new trial. After a second trial, a jury found all parties negligent and allocated sixty percent of the fault to Spokane County, thirty percent to Malinak, and ten percent to Tapken. The jury awarded $12,535,000 to Tapken and $35,000 to Malinak. In this second appeal, Spokane County

and Madelynn Tapken assign errors to trial court rulings. We affirm all rulings except a ruling allowing Conrad Malinak to recover medical expenses.

FACTS

The numerous assignments of error raised by the three parties, Spokane County, Conrad Malinak, and Madelynn Tapken, prolong this opinion. We borrow the facts from a jury trial and generally render the facts favorable to the prevailing party or, as to one assignment of error, to the party seeking a jury instruction.

No independent witness observed the September 28, 2011 motorcycle accident involving Madelynn Tapken and Conrad Malinak. Because of a head injury, Tapken retains no memory of the events of the day. Conrad Malinak holds the only percipient knowledge of the accident.

In the summer of 2011, Conrad Malinak and Madelynn Tapken met at work. After becoming acquainted, Tapken learned that Malinak owned a motorcycle. She told Malinak that she had experience riding motorcycles as she had ridden with her father and ex-boyfriends. The two agreed to ride together, and a first ride ended safely. Before the first ride, Malinak instructed Tapken to mimic his movement when he leaned one way or the other.

On September 28, 2011, Conrad Malinak and Madelynn Tapken rode on Malinak's motorcycle for a second ride. They planned to ride south from Spokane through the rolling Palouse hills to the charming farming town of Fairfield and the

2

pastoral agriculture community of Waverly. Malinak had previously ridden in the vicinity of Fairfield and held some familiarity with the area roads. On September 28, the sun shone, no wind blew, and the temperature reached sixty degrees.

Spokane County Sheriff Sergeant David Thornburg interviewed Conrad Malinak at Spokane's Sacred Heart Medical Center the day of the accident. Malinak told Sergeant Thornburg that he had ridden the route "many times" and found the route enjoyable. Report of Proceedings (RP) (June 23, 2017) at 1297. Thornburg did not ask Malinak the number of times he traveled the route. Malinak added that he was "familiar" with the route. RP (June 23, 2017) at 1298. During trial testimony, Malinak averred that he traversed the route three or four times earlier.

On September 28, Conrad Malinak drove his motorcycle, with Madelynn Tapken at his back, south from Spokane Valley on State Highway 27 to Fairfield. Near Fairfield, Malinak turned from the state highway to a Spokane County road, South Prairie View Road, to ride southerly toward Waverly. Malinak drove at the speed limit of 45 m.p.h. As the two continued toward Waverly, they approached an intersection known by locals as the "Waverly Y." At the intersection, East Spangle Waverly Road intersects with South Prairie View Road. As one travels south on Prairie View Road, one bears to the left to continue on the road to enter Waverly. One must execute a sharp veer to the right to enter E. Spangle Waverly Road, which leads to the quiet town of Spangle.

Spokane County regulated the converging traffic at the intersection of South

3

Prairie View Road and East Spangle Waverly Road with various signs. A yield sign 775 feet from the Y intersection warned a driver traveling south on Prairie View Road. Two yield signs in the intersection, one for a driver turning to the right and another for a driver veering to the left, also warned the driver. As a southbound driver passed the first yield ahead warning sign, the driver saw a large hawthorn bush on the right side of South Prairie View Road several hundred feet before the intersection. The bush obscured both the later yield sign for traffic heading right and a portion of the roadway to the right. The obstruction impeded a driver approaching from the north to gauge the sharpness of the right turn until the driver approached the large bush and intersection. No sign warned the driver to reduce speed below the posted speed limit of 45 m.p.h. In the four miles between Fairfield and the Waverly Y, Conrad Malinak encountered many curves in the roadway, each preceded by a curve warning sign and most also preceded by an advisory speed warning sign.

As Conrad Malinak with his passenger approached the Waverly Y on September 28, Malinak did not notice the two yield signs near the intersection. He did not see the yield sign on the right because the large hawthorn bush obstructed his vision. Nevertheless, he slowed to 35-40 m.p.h. in order to execute the right-hand curve onto East Spangle Waverly Road. Malinak planned to turn right at the Y, as he mistakenly believed Waverly lay to the west. As he entered the curve, Malinak leaned right to turn the motorcycle, and Madelynn Tapken mimicked his movement.

4

As the motorcycle entered the intersection, Conrad Malinak realized the right turn was sharper than anticipated. He estimated that even at 5 to 10 m.p.h. below the speed limit, he could not negotiate the right-hand curve safely. He abruptly braked and leaned left in a desperate attempt to change directions and to securely complete the more gradual turn left. He concluded he could keep his motorcycle on the road only by braking and leaning left.

According to Conrad Malinak, when he leaned left to turn left, Madelynn Tapken failed to follow his lean. We will detail trial testimony on this fact later. Instead of the motorcycle turning to the left, the cycle proceeded straight through the intersection, traveled in the air for fifty feet, and ended in a pit. Madelynn Tapken sustained severe injuries, including a head injury, in the crash. She became paralyzed from the chest down. Conrad Malinak sustained lesser injuries.

PROCEDURE

The injured passenger, Madelynn Tapken, sued Spokane County for an alleged unsafe road and Conrad Malinak for negligent operation of the motorcycle. Malinak cross claimed against Spokane County for his injuries. Spokane County denied the presence of an unsafe road and contended that both Malinak and Tapken acted negligently. The county contended that Tapken could have leaned, but failed to lean, left when Malinak leaned left and Tapken's failure in part caused the accident.

This appeal comes to us after a second trial. Before the first trial, the superior

court ruled that prior accidents occurring in 1995, 2007, and 2009 were substantially similar to Conrad Malinak's and Madelynn Tapken's accident such that evidence of those earlier accidents could be admitted to show that Spokane County knew of the alleged unsafe conditions at the Waverly Y. The superior court later reversed the evidentiary ruling and excluded the accident history after Spokane County admitted notice of the presence of the hawthorn bush.

Before the first trial, Madelynn Tapken moved for partial summary judgment on the issue of her comparative fault. Her motion claimed that no reasonable juror could conclude that she acted unreasonably. The superior court denied Tapken's motion for partial summary judgment.

After Madelynn Tapken and Conrad Malinak rested in the first trial, the superior court granted Spokane County's CR 50 motion for judgment as a matter of law. The trial court adjudged, as a matter of law, the county to be free of negligence and ruled that, as a matter of law, any alleged negligence did not proximately cause Tapken's and Conrad Malinak's injuries. The superior court also dismissed Conrad Malinak's claim for medical expenses not only because of a lack of fault on the part of Spokane County but because Malinak presented as an exhibit a summary of the bills rather than the medical bills themselves and because Malinak failed to introduce evidence that the claimed expenses were reasonable and necessary. Before the trial court, Tapken did not challenge the sufficiency of the evidence as to the county's defense of comparative fault, nor did

she move the court, under CR 50, to dismiss the defense since Spokane County had yet to present its defense.

Following the dismissal of Spokane County, Madelynn Tapken voluntarily dismissed her claim against Conrad Malinak, and she appealed the trial court's order dismissing her suit against the county. Malinak also appealed the trial court's dismissal of his claims. Malinak's notice of appeal read:

> Defendant and Cross Claimant Conrad Malinak seeks review by the designated appellate court of that Order entered on September 30, 2014 Granting Judgment as a Matter of Law, and all other rulings or orders that became final upon entry of that judgment and which prejudicially affect the judgment.

Clerk's Papers (CP) at 2943.

During the first appeal, Conrad Malinak filed a stunted appeal brief that merely adopted the arguments of Madelynn Tapken with regard to the ruling that Spokane County was not negligent as a matter of law. Malinak's appeal brief did not assign error to the trial court's ruling that, as a matter of law, he failed to establish his claim for medical bills.

On appeal, this reviewing court reversed the trial court's CR 50 dismissal of Spokane County from the case and remanded the case for trial. This court concluded that Madelynn Tapken and Conrad Malinak presented evidence that a driver approaching from the north would be unable to appreciate the sharpness of the road, which veered right, until too late. This court further concluded that Tapken and Malinak presented

7

substantial evidence that the county breached its duty to design and maintain a safe intersection. We observed that "evidence establishes that Malinak would have slowed more had he been able to perceive the sharpness of the right turn earlier" such that any negligence of Spokane County could be a proximate cause of Tapken's and Malinak's injuries. *Tapken v. Spokane County*, No. 32909-7-III, slip op. at 9-11 (Wash. Ct. App. Jan. 12, 2016) (unpublished) http://www.courts.wa.gov/opinions/; CP at 50.

During the first appeal, Madelynn Tapken argued that no evidence supported Spokane County's defense of comparative fault on her part. This court affirmed the trial court's denial of Tapken's motion for partial summary judgment seeking dismissal of the county's affirmative defense and held that comparative fault posed a question of fact for the jury. This court concluded: "Despite Malinak's sudden and unexpected weight shift to the left, it is a genuine issue of material fact what a reasonable motorcycle passenger would have done in Tapken's situation." *Tapken v. Spokane County*, No. 32909-7-III, slip op. at 18; CP at 57.

During the first appeal, this court also addressed Madelynn Tapken's and Conrad Malinak's challenge to the trial judge's decision to exclude evidence of prior accidents, and we affirmed the decision based on Spokane County's admission that it knew of the bush and its partial obstruction of southbound travelers despite the county refusing to admit the dangerousness of the condition. This court wrote:

> Prior to trial, the County admitted that it had notice that the large

hawthorn bush obscured the intersection, although it disputed that this
condition was dangerous.  At trial, the County equivocated somewhat.  It
disputed the degree to which the hawthorn bush actually obscured the yield
sign and the intersection, but it certainly did not claim to have lacked notice
of the condition.
 . . . .
 . . . The relevant notice is notice of the alleged dangerous
condition—which the County admitted—not whether the condition actually
was dangerous."

*Tapken v. Spokane County*, No. 32909-7-III, slip op. at 14; CP at 53.  This court added a

caveat in the following footnote:

If the County's evidence at trial leaves the jury with the false
impression that there has never been any similar accidents at the
intersection, the trial court may reevaluate the relevance and admissibility
of the substantially similar accidents.

*Tapken v. Spokane County*, No. 32909-7-III, slip op. at 14-16 n.5; CP at 53-55.

On remand, the original trial judge recused himself.  A second trial judge

temporarily presided over proceedings.  A third trial judge was appointed shortly before

the second trial and presided over the trial.

During the first appeal, this court did not address dismissal of Conrad Malinak's

damage claim for medical bills since Malinak never assigned error to the ruling and never

discussed the ruling in his appeal brief.  On remand, Spokane County moved to enforce

the earlier dismissal of Conrad Malinak's claim for medical expenses because Malinak

did not appeal the ruling.  The county claimed that the ruling had become the law of the

case.  Months before trial, the second trial judge granted the county's motion because

9

Malinak did not appeal the dismissal of this claim.

On remand, Madelynn Tapken asked the trial court to readdress and dismiss on summary judgment Spokane County's defense of her comparative fault. At the conclusion of the hearing on the motion for summary judgment, the second trial judge entertained the motion and commented:

> As far as I'll go with the easy one. The Court of Appeals held the denial of Tapken's motion for partial and the issue of comparative fault. That's a question of fact. I'm going to leave that out there the way it was. As far as—but that doesn't mean you can't.
> . . . .
> I'm saying as far as what he had in front of him, that's the ruling he made. He can raise it at a later date because depending what comes up with the evidence at that point.

RP (Oct. 7, 2016) at 57. The second trial judge entered an order that read:

> 7. In light of the Court of Appeals' decision affirming the denial of Tapken's Motion for Partial Summary Judgment regarding comparative fault, this ruling by the prior trial court will stand. This ruling does not preclude any party from moving for summary judgment or judgment as a matter of law on any additional theory or issue that is supported by the evidence in the case.

CP at 655.

Before the second trial, Spokane County renewed the request to preclude evidence of earlier accidents at the Waverly Y. The county argued exclusion of the evidence became the law of the case based on this appeals court's ruling.

The second trial judge ruled that Madelynn Tapken could not present evidence of earlier accidents as long as Spokane County conceded that the hawthorn bush obstructed

10

the second yield sign on the right side of the road and obstructed the view of the

sharpness of the right-hand curve. Tapken thereafter sent Spokane County two requests

asking the county to admit it had notice: (1) that the bush obstructed the sharpness of the

curve, and (2) the bush obscured the view of the yield sign. In response, Spokane County

admitted it knew the hawthorn bush obscured the yield sign. But the county objected to

the request to admit that the bush obstructed the view of the degree of the right turn, and

the county declared that the bush only partially blocked the view of the curve.

Madelynn Tapken filed a motion to force Spokane County to answer the request

for admission without objection and without equivocation. The trial court granted

Tapken's motion. In turn, Spokane County denied that the hawthorn bush impeded the

sight of the sharpness of the turn.

Madelynn Tapken filed a motion requesting the trial court to, based on Spokane

County's failure to admit the hawthorn bush obscured the view of the sharpness of the

right turn, permit evidence of earlier similar accidents at the Waverly Y. In response,

Spokane County argued that this court's decision permitted evidence of other accidents

only if the county's evidence renders the false impression that no earlier accidents

occurred at the Waverly Y. The third trial judge correctly noted, however, that this court

assumed that the county agreed it possessed notice that the black hawthorn bush blocked

the view of the turn to the right and the county no longer conceded this fact. Spokane

County then equivocated and claimed it did not hold the position that the bush did not

11

block the view of the curve.

In support of Madelynn Tapken's motion to introduce evidence of the three earlier accidents, she presented a declaration from Ed Stevens, a transportation engineer with expertise in safe road design and maintenance. According to Stevens, a competent design engineer will review accident history, if any, in determining whether a road or intersection is reasonably safe. Earlier accidents occurring at or near a particular location under similar circumstances or involving a similar path of travel can indicate a dangerous condition. Assuming someone reported the accidents to the responsible governmental entity, the accident history shows government's knowledge of an unsafe condition.

Ed Stevens had reviewed the known accident history, preceding Madelynn Tapken's accident, for the Waverly Y intersection. Stevens recognized that each accident had differences, but, with regard to the Waverly Y, Stevens considered an accident substantially similar to the subject accident if a driver traveling southbound on Prairie View Road toward the Waverly Y failed to negotiate the turns due to speed and went off the roadway. Stevens deemed the following accidents at the Waverly Y to be similar to Madelynn Tapken's accident:

1. February 18, 1995. Heading southbound on Prairie View Road, Ricky Kazemba of Rosalia, Washington, failed to negotiate the right turn due to speed. His vehicle slid straight through the "Y", left the roadway, and rolled over on the embankment on the south side of the intersection.
2. December 12, 2007. Heading southbound on Prairie View Road, Eric Andersen of Toledo, Washington, failed to negotiate the right turn due to speed. His vehicle slid straight through the "Y" in light snow or slush,

12

left the roadway, and rolled over on the embankment to the south. I understand that Mr. Andersen testified in his recent deposition that it was just starting to snow and there were just small amounts of spotty ice on the road.

3. April 12, 2008. Heading southbound on Prairie View Road, after encountering deer in the roadway prior to the intersection, Joshua Eldred of Ford, Washington, failed to negotiate the right turn due to speed. His vehicle continued straight through the "Y" and skidded off the roadway and down the embankment to the south.

4. September 5, 2009. Heading southbound on Prairie View Road, Jared Freeman of College Place, Washington, failed to negotiate the right turn due to speed. His vehicle continued straight through the "Y", left the roadway, and rolled over on the embankment to the south. I understand that Mr. Freeman testified in his recent deposition that the hawthorn bush obstructed his view of the sharp curve to the right.

5. February 26, 2010. Heading southbound on Prairie View Road, Michael Suchanek of Rosalia, Washington, failed to negotiate the intersection due to speed. His vehicle skidded off the roadway sideways and rolled over on the embankment on the east side of the intersection.

CP at 1362-63 (boldface omitted). Thus, Stevens concluded that five, not three, accidents bore similarity. In support of his conclusion that the five accidents were substantially similar to Madelynn Tapken's accident, Ed Stevens observed that Spokane County identified accidents two through five, along with Tapken's accident, in preparing an application for a grant from the State of Washington to realign the intersection to improve safety.

During the hearing on Madelynn Tapken's request to introduce evidence of earlier accidents, the following colloquy occurred between the third trial judge and Spokane County's counsel:

[COUNTY COUNSEL]: Our position has also been that a portion of

13

the black hawthorn bush obscures the sight view to a portion of the intersection. We have never said that it obscures the intersection. We've always said it obscures a portion of the intersection.

THE COURT: So the portion of the Court of Appeals decision that I was reading from was incorrect?

[COUNTY COUNSEL]: Well, I don't want to say that the portion was incorrect, but what I will say is that I have gone through the trial testimony from front to end, and I have not seen any testimony from any witness, either the plaintiff's expert or the lay witnesses that says the black hawthorn bush obscures the sight view to the intersection. And so I'm going to let you conclude what you want, but I'm saying plaintiffs certainly haven't pointed to any in their materials before you, and I could find none, no testimony from any witness that said the black hawthorn bush obscured the view of the intersection.

. . . .

THE COURT: Okay. And what portion of that intersection was — how do we define what portion of that intersection was blocked by the hawthorn bush?

. . . .

[COUNTY COUNSEL]: Sure. So Exhibit No. 145 shows the yield-ahead sign that is approximately 800 feet from the intersection. The black hawthorn bush is right here. What the court is seeing here in this photograph is the connector road that goes to the right. And the black hawthorn bush, at least the way we see this photograph, blocks a portion of this connection between the connector road and the Spangle Waverly Road that goes where this car is. So we've never denied that the bush was here. We've never denied that the bush blocks a portion of this connector road going to the right. But we have denied that this bush blocks the intersection. That's what we've denied. Not that it blocks the—it—we've denied that it blocks the entire intersection. We admit that from this angle, this black hawthorn bush blocks a portion of the right-hand turn.

. . . .

THE COURT: Well, don't I have to conclude—doesn't the county have to admit and don't I have to conclude that that hawthorn bush then does create a dangerous condition?

[COUNTY COUNSEL]: No.

THE COURT: Then how do I get to the analysis with regard to the county's duty if there is a dangerous condition?

. . . .

[COUNTY COUNSEL]: The Court of Appeals, I believe, is instructive of this analysis. The Court of Appeals says on Page 14: Prior to trial, the county admitted that it had notice that the large hawthorn bush obscured the intersection, although it disputed that this condition was dangerous. At trial the county equivocated somewhat. It disputed the degree to which the hawthorn bush actually obscured the yield sign and the intersection, same position we're taking now. But it certainly did not claim to have lacked notice of the condition. And so the Court of Appeals is saying that the notice is of the condition, not that the condition is dangerous; only notice of the condition.

THE COURT: And I don't want to keep interrupting, [County Counsel]. I'm trying to understand. I thought when you were up here that you told me that this yield-ahead sign was placed because the county was aware, and that that was a remedial measure. That was how they fixed the dangerous condition ahead. Did I misunderstand that?

[COUNTY COUNSEL]: The way you phrased it is a little different than the way I did, but I'll state it again. It's—according to the [Manual of Uniform Traffic Control Devices], when you have a yield sign that is obscured by the contours of the land or by foliage or by anything, the way that you correct for that condition is that you place—you put a yield-ahead sign in advance of it.

. . . .

THE COURT: Is there evidence in this case whether or not the yield sign, when installed, was obscured by what?

[COUNTY COUNSEL]: The testimony of Mr. Greene is that he believes that the yield-ahead sign was placed there because the natural growth of the black hawthorn bush obscured the side view to the yield condition that was there. According to him, otherwise there's no reason to put the yield-ahead sign there. I mean, if you can see the yield sign from 400 feet away, you don't need to have a yield-ahead sign in advance of it.

RP (June 9, 2017) at 62-68.

In reply during oral argument, Madelynn Tapken's counsel emphasized that

Tapken asked Spokane County to admit that the hawthorn bush interfered in the view of

the right curve not that the bush obstructed the Waverly Y intersection. Tapken's counsel

15

argued that Spokane County continually changed its position as to its admissions. The trial court, at least in part, concurred with Tapken's concern that the county failed to unambiguously declare those facts as to which it conceded. In addition, the county failed to concede any dangerous condition present at the Waverly Y, regardless of the cause of the condition. The trial court reasoned that, because of Spokane County's elusiveness, Madelynn Tapken needed to and should be permitted to provide evidence of previous accidents to show notice. The court ruled that Tapken could introduce evidence of the three accidents declared similar during the first trial: the February 18, 1995 accident, the December 12, 2007 accident, and the September 5, 2009 accident.

A case scheduling order on remand required Conrad Malinak's disclosure of witnesses in March 2017. On March 13, 2017, Spokane County's attorney contacted Malinak's attorney because Malinak had made no disclosure. Malinak's attorney stated Malinak would not call to testify, at the second trial, any expert witness other than those identified during the 2014 trial.

On May 8, 2017, two days before the discovery cutoff date, Conrad Malinak disclosed a new expert, Charles Morrison, M.D., whom he claimed would testify regarding his injuries and treatment. Malinak wrote that Dr. Morrison would opine as to the full extent of Malinak's injuries, that the motorcycle accident likely caused Malinak's injuries, and that the expenses for treatment were reasonable and necessary. On May 8, Malinak's counsel invited Spokane County to depose Dr. Morrison and suggested a

16

deposition date of May 23.

Two weeks before the second trial, Spokane County filed numerous motions in limine. Among other motions, the county moved to exclude Dr. Charles Morrison as a witness because of the late witness disclosure. The county, based on receiving proposed exhibits that referenced Conrad Malinak's medical bills, also asked that any evidence of the bills be precluded because of the prior dismissal of the damage claim for bills. In this appeal, Malinak cites to no pleading he filed, by which he sought reversal of the second trial judge's ruling upholding the dismissal of the claim by the judge presiding over the first trial.

The third trial judge entertained argument on Spokane County's motions in limine at the beginning of trial. In response to the county's request to exclude Charles Morrison as a witness, Conrad Malinak stated that he wished Morrison to testify to the necessity of the care and treatment afforded Malinak by Sacred Heart Medical Center and to testify to the motorcycle accident causing Malinak's injury. Malinak did not ask that Morrison be able to testify to the reasonableness of any medical bills. Malinak did not ask that the third trial judge revisit the first or second trial judge's rulings excluding the damage claim for medical bills. After argument, the third judge reserved a ruling on whether to permit Morrison to testify. The trial judge did not then suggest that it would permit Malinak to present a claim for medical bills to the jury.

Later, during Spokane County's motions in limine hearing at the beginning of

trial, the third trial judge separately addressed Spokane County's motion in limine to

preclude admission of any medical bills because of the dismissal of the claim for bills. In

response, Conrad Malinak's counsel argued:

> The court has discretion to allow Mr. Malinak to submit the medical
> expenses he incurred as a result of this accident. And that's all we're
> asking the court to do; to exercise its discretion, let him present clearcut
> evidence of these medical billings that he received. There's no dispute
> whether or not he had medical bills when [he] was at Sacred Heart Medical
> Center.

RP (June 12, 2017) at 251. Malinak did not state whether he sought admission of the

medical expenses solely in order to help explain to the jury the extent of his injuries and

his pain and suffering or whether he sought admission of the bills in order to recover the

expenses. Malinak did not expressly ask that the new trial judge readdress and change

the second trial judge's decision.

The trial court replied:

> THE COURT: . . .
> Counsel, I'm going to listen carefully. If there's foundation laid,
> then I'm going to allow the medical information, the cost of the medical
> bills to come in, in this case. I think that it is important that this matter get
> tried completely this time around; and, hopefully, we have a jury's verdict.
> And so that's my ruling.

RP (June 12, 2017) at 251. Although the trial judge tentatively ruled that he would

permit evidence of the bills, the trial court did not expressly rule that Malinak could seek

recovery of the medical bills. Apparently Spokane County viewed the trial court's

decision as permitting Malinak to ask the jury for payment of the medical expenses,

18

because the county later asked the third trial judge to recuse himself for a number of reasons, including the reversal of the earlier trial judge's preclusion of such damages.

Neither party cites to any page in the record where the trial court denied Spokane County's motion to exclude Dr. Charles Morrison from testifying. Nonetheless, Charles Morrison testified at trial.

During the second trial, Madelynn Tapken presented testimony from three experts: Edward Stevens, a highway design expert; Richard Gill, a human-factors engineer; and Steven Harbinson, an accident reconstructionist and motorcycle expert. Tapken's experts identified five defects in the design and maintenance of the Waverly Y that combined to mislead Conrad Malinak and contributed to his failure to sufficiently slow for the right-hand curve. First, the warning signs to slow down on the preceding eights curves created the expectation that all significant curves would have similar signs. Second, Spokane County placed the first yield-ahead sign too far in advance of the intersection. Third, the hawthorn bush obscured the curve's sharpness to the right. Fourth, the same bush obscured the yield sign on the right. Fifth, Spokane County located the directional sign in the middle of the "Y," indicating Waverly to the left and Spangle to the right, beyond, rather than preceding, the intersection.

During the jury trial, Madelynn Tapken presented testimony about the three single vehicle accidents at the Waverly Y before Tapken's September 2011 accident. In each of the accidents, a driver traveling southbound on Prairie View Road presumably failed to

19

appreciate the right turn due to speed and went off the roadway and down the embankment.

Madelynn Tapken called as a trial witness Darin DeRuwe, who served as a Washington State Patrol Trooper on February 18, 1995. Trooper DeRuwe responded to an accident at the Waverly Y on that day. When he arrived at the location, he saw a GMC pickup truck over the embankment at the south side of the Y. The vehicle lay on its top or its side and had spilled diesel fuel on the ground. The trooper never located the operator of the vehicle. DeRuwe concluded, based on tire marks, that the driver traveled southbound on Prairie View Road and attempted to execute a right hand turn to travel west on East Spangle Waverly Road. The roadway was dry.

Eric Andersen was involved in an accident at the Waverly Y on December 12, 2007. Beginning in September 2007, Andersen drove the road from Cheney to Fairfield twice a month in order to visit a girlfriend. On the night of December 12, Andersen left his friend's home in Fairfield at 9:00 p.m. He may not have traveled the route before in darkness. He journeyed southbound on Prairie View Road at 35 m.p.h. and intended to travel to Spangle. Andersen lost control of his vehicle when executing the turn to the right. The car likely went over black ice. He surmised he would not have lost control but for the black ice. The car traveled across the intersection's triangle and rolled down the embankment south of the Y. Andersen saw no sign warning of the curve or directing the traveler to reduce speed. Andersen has since married the girlfriend and still travels the

20

road to visit his wife's family. He now slows to 15 m.p.h. to execute the right-hand curve.

Jared Freeman testified to an accident at the Waverly Y on a sunny September 5, 2009. Freeman drove his Honda car for the first time southbound on Prairie View Road. He traveled at 50 to 55 m.p.h. Freeman saw a yield sign on the left hand side of the road, but he did not slow because he intended to turn right. He later learned he traveled too fast to execute the right curve and applied his brakes. The Honda skidded, rolled, and journeyed down the embankment on the other side of the Waverly Y.

A Spokane County sheriff deputy charged Jason Freeman with driving too fast for the conditions. As a result, Freeman took a video and photographs of the Waverly Y in his quest to defeat the ticket. During the Madelynn Tapken trial, Freeman showed the jury photos and explained, based on the pictures, his inability to timely appreciate the degree of the right curve. A massive bush on the right side of the road obstructed his view of the right turn. The road contained no warning of the curve or of a need to reduce one's speed.

During trial, Conrad Malinak testified to the circumstances of the September 28, 2011 motorcycle accident:

> As we got closer and closer, there was—it's been spoken to, but there's this big bush that blocks the right-hand curve. And as—as I get closer to this intersection, I'm slowing down, I'm getting ready to make this—this turn to the right. And as I cleared that bush I can now see how sharp this corner is. And I—it's unbelievable to me. I'm coming to this

21

corner, I've even slowed down, I've got this passenger on the back of my bike, and now I'm put into this situation where there's no way I can make this sharp corner. There's—it's not possible. And so I—I think about my options. And so primary objective would be to keep the motorcycle on the road and avoid any kind of an accident. And I didn't think that I could keep it on the road in the right-hand curve at the speed I was going. And so the curve to the left is not as sharp. And so my—my reaction, what I did in what I thought was an emergency, what ended up being very much an emergency, was I—I tried to switch the motorcycle to the left-hand lane. I tried to take the left-hand corner at the last second. And as I changed my lean to go to the left, the motorcycle sort of stayed in the center upright position, and after that it's—it's a blur. And I'm not sure if I lost consciousness, but that's when we went off the road. And I—I remember the motorcycle falling out from underneath me. I remember Maddy [Madelynn Tapken] grabbing me and screaming in my ear. And next thing I remember, I was on my back just laying there. And it was like a dream.

RP (June 20, 2017) at 856-57. During his direct testimony, Malinak testified about

whether Madelynn Tapken leaned to the left when he leaned to the left:

> Q. All right. Did Maddy Tapken have any time to react to your decision to go from a right lean to a left lean?
> A. So Maddy would have had even less time. So being behind me, she doesn't even have as much view as I did, so primarily she would be reacting to my reaction.

RP (June 20, 2017) at 860.

Spokane County's counsel, during cross-examination of Conrad Malinak,

questioned Malinak about testimony he gave during a deposition about a statement he

gave after the September 2011 accident to Sheriff Sergeant David Thornburg:

> Q. He, referring to you again, started to lean right to make a right turn, and so did Maddy; is that accurate?
> Answer: Yes.
> He then decided to go left instead. So he leaned back to the left but

22

Maddy leaned even farther right; is that accurate?  I believe that's what I told him.  And to the best of my knowledge, that's what happened.

Did I read that correctly?

A. Yes, sir.

Q. So that is what you told Detective Thornburg when he interviewed you at Sacred Heart Hospital on September 28, 2011; is that correct?

A. I'll give the same answer I gave in my deposition: To the best of my knowledge, that's what I told him.

RP (June 21, 2017) at 932-33.

Madelynn Tapken's counsel later questioned Conrad Malinak about Malinak's testimony during a deposition about Tapken's performance as a rider on the motorcycle:

Q. And when she leaned to the right and you leaned to the right, she was acting appropriately and properly as she had been taught?

Answer:  Yes.

Question:  What was the time distance, the time that elapsed between the leaning to the right and then your lean to the left?  How much time would have elapsed?

Answer:  A split second.  I mean I couldn't even . . . .

Question:  A mini second?

Answer:  I couldn't even tell you.  It was just a short period of time. It was the blink of an eye.

Question:  Less than a second?

Answer:  Probably.

Was that your testimony?

A. Yes.

Q. And is that true?

A. Yeah.

RP (June 21, 2017) at 974.

During trial, Conrad Malinak contended he should be absolved of comparative fault because he confronted an emergency situation when approaching the Waverly Y

intersection. When asked by counsel why he felt he was in an emergency situation,

Malinak responded:

> As I came around the corner and I could see the rest of the right-hand curve, I saw it was too sharp to make at the speed I was going, so I needed to make a decision to try to keep the motorcycle on the road.

RP (June 20, 2017) at 910.

Deputy Sheriff David Thornburg testified at trial that Conrad Malinak told him

that, when Malinak turned left, Madelynn Tapken failed to follow his lean. Spokane

County's motorcycle expert, Stephen Garets, was impeached with his deposition

testimony that Madelynn Tapken confronted an "emergency situation" and had to make a

"split-second decision." RP (June 28, 2017) at 1603-04. Garets then adopted this

deposition testimony as his trial testimony.

When Conrad Malinak presented his case, Dr. Charles Morrison testified that

Malinak's medical billings and treatment were reasonable and necessary. During cross-

examination, Charles Morrision admitted that he was the personal physician and a friend

of Malinak's attorney. Malinak's counsel first asked Morrison to review the records and

billings relating to Malinak's treatment three weeks before trial. Dr. Morrison had not

surveyed the type of hospital charges claimed by Malinak either at the local or national

level. Morrison had not compared the cost of medical treatment claimed by Malinak with

costs of similar treatment as outlined by the American Medical Association or the

Washington Department of Health.  During trial, Conrad Malinak testified about his

injuries and emotional trauma resulting from the accident.

The trial court delivered several jury instructions that defined the concepts of

negligence, ordinary care, and contributory negligence in the abstract.  Jury instruction 6

stated:

> Ordinary care means the care a reasonably careful person or
> reasonably careful governmental entity would exercise under the same or
> similar circumstances.

CP at 2616.  Instruction 7 intoned:

> Negligence is the failure to exercise ordinary care.  It is the doing of
> some act that a reasonably careful person would not do under the same or
> similar circumstances or the failure to do some act that a reasonably careful
> person would have done under the same or similar circumstances.

CP at 2617.  Jury instruction 8 declared:

> Contributory negligence is negligence on the part of a person
> claiming injury or damage that is a proximate cause of the injury or damage
> claimed.

CP at 2618.

Next, the trial court instructed the jury as to the duties of Spokane County as

overseer of South Prairie View Road, East Spangle Waverly Road, and the Waverly Y.

Jury instruction 11 declared:

> Spokane County has a duty to exercise ordinary care in the
> maintenance of its public roads to keep them in a reasonably safe condition
> for ordinary travel.

CP at 2622.  Instruction 12 read:

> In order to find a county liable for an unsafe condition of a road that was not created by its employees, you must find that the county had notice of the condition and that it had a reasonable opportunity to correct the condition or give proper warning of the condition's existence.
>
> A county is deemed to have notice of an unsafe condition if the condition has come to the actual attention of its employees or agents, or the condition existed for a sufficient length of time and under such circumstances that its employees or agents should have discovered the condition in the exercise of ordinary care.

CP at 2623.  Finally, the trial court instructed the jury in instruction 14:

> The duty of a governmental body to warn of a dangerous or unsafe roadway condition is not eliminated by general knowledge of a motorist of roadway conditions.

CP at 2625.  The trial court based jury instructions 11 and 12 respectively on 6A

*Washington Practice: Washington Pattern Jury Instructions: Civil* 140.01 (2012) (WPI)

and 6A WPI 140.02.  Spokane County objected that jury instruction 14, not based on a

pattern instruction, misstated the law.

The trial court refused to give the county's proposed instruction D-23, which read:

> The County has no duty to warn a road user about a road hazard if the hazard is open, apparent, and known to the road user.  Whether a hazard is open and apparent depends on whether the road user knew, or had reason to know, the full extent of the risk posed by the condition.

CP at 2343.  Spokane County complained that withholding its proposed instruction

precluded it from arguing its theory of the case that it owed no duty to warn because of

Conrad Malinak's familiarity with the intersection and the open and apparent nature of any danger.

The trial court delivered many jury instructions that covered Conrad Malinak's and Madelynn Tapken's duty to act with ordinary care and Malinak's duty as the operator of the motorcycle. In turn, the instructions delegated to the jury the task of comparing the fault of Malinak or Tapken, assuming any negligence on each's respective part, to any fault of Spokane County. As to Conrad Malinak's obligations as the motorcyclist, jury instruction 10 stated:

> Every person has a duty to see what would be seen by a person exercising ordinary care.

CP at 2621. Jury instruction 21 read:

> The violation, if any, of a statute is not necessarily negligence, but may be considered by you as evidence in determining negligence.

CP at 2632. Jury instruction 22 stated:

> A statute provides:
> The driver of a vehicle approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions and if required for safety to stop, shall stop at a clearly marked stop line, but if none, before entering a marked crosswalk on the near side of the intersection or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the roadway, and then after slowing or stopping, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time such driver is moving across or within the intersection or junction of roadways: PROVIDED, That if such a driver is involved in a collision with a vehicle in the intersection or junction of

27

roadways, after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of the driver's failure to yield right-of-way.

CP at 2633. Jury instruction 23 intoned:

A statute provides that the driver of any vehicle, every bicyclist, and every pedestrian shall obey the instructions of any official traffic control device applicable thereto placed in accordance with the provisions of Washington law, unless otherwise directed by a traffic or police officer, subject to the exception granted the driver of an authorized emergency vehicle.

CP at 2634. Jury instruction 26 provided:

A statute provides that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be controlled as may be necessary to avoid colliding with others who are complying with the law and with the duty of all persons to use due care.

The statute provides that the driver of every vehicle shall drive at an appropriate reduced speed when approaching and crossing an intersection, when approaching and going around a curve, when travelling upon any narrow or winding roadway, when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

The maximum statutory speed limit at the place here involved was 45 miles per hour.

CP at 2637. Finally, jury instruction 9 read:

If you find contributory negligence, you must determine the degree of negligence, expressed as a percentage, attributable to the person claiming injury or damage. The court will furnish you a special verdict form for this purpose. Your answers to the questions in the special verdict form will furnish the basis by which the court will apportion damages, if any.

CP at 2619. Madelynn Tapken did not object to instruction 9. To the contrary, Tapken

28

also proposed an instruction on comparative fault.

Over Spokane County's objection, the trial court gave, as jury instruction 13, the

Washington pattern instruction on the sudden emergency doctrine, which declared:

> A person who is suddenly confronted by an emergency through no
> negligence of his or her own and who is compelled to decide instantly how
> to avoid injury and who makes such a choice as a reasonably careful person
> placed in such a position might make, is not negligent even though it is not
> the wisest choice.

6 WPI 12.02; CP at 2624. The county argued that the evidence did not support the

instruction and that the emergency doctrine was unavailable to Conrad Malinak and

Madelynn Tapken because of their partial fault for the accident. Against Spokane

County's objection, the trial court delivered instruction 31, which read in part that Conrad

Malinak's claim against the county included "[u]ndisputed medical expenses incurred in

the amount of $21,395.58." CP at 2643.

At the conclusion of trial, Madelynn Tapken did not challenge the sufficiency of

evidence for Spokane County's defense of comparative fault. Tapken's proposed verdict

form directed the jury to determine whether she was at fault and to weigh her

comparative fault against any fault of Spokane County and Conrad Malinak.

The jury entered a verdict finding all parties negligent and apportioning sixty

percent of fault to Spokane County, thirty percent to Conrad Malinak, and ten percent to

Madelynn Tapken. The jury found Tapken's damages totaled $12,535,000 and Malinak's

totaled $35,000. Based on the fault allocation, the trial court entered judgment for

Tapken against the county in the amount of $7,521,000 and against Malinak in the amount of $3,760,500.

## LAW AND ANALYSIS

The parties assign numerous errors on appeal. Spokane County assigns error to jury instructions 13 and 14 and the trial court's refusal to grant its proposed instruction D-23. According to the county, the trial court also erred in allowing testimony about earlier accidents at the Waverly Y, when reinstating Conrad Malinak's claim for medical expenses, and in denying the county's motion in limine to exclude an untimely disclosed expert witness, Charles Morrison. Finally, Spokane County assigns error to jury instruction 31, which informed the jury of no dispute concerning the medical expenses. Madelynn Tapken assigns error to the trial court's delivery of jury instruction 9 that permitted the jury to assess comparative fault on Tapken. We address all of the assignments of error that concern liability or fault before addressing assigned errors related to Conrad Malinak's damages.

### Spokane County's Duty

*Assignment of Error 1: Whether the trial court erred by giving Jury Instruction No. 14?*

*Answer 1: No.*

Spokane County assigns error to jury instruction 14 and the failure to give the county's proposed instruction D-23. The county fuses its arguments with regard to the

delivered instruction and the withheld instruction. Although the principles of law

attendant to the two assignments of error overlap, we analyze each assignment of error

separately.

Jury instructions are sufficient if they are readily understood, not misleading, and

permit a party to argue its theory of the case to the jury. *Keller v. City of Spokane*, 146

Wn.2d 237, 249, 44 P.3d 845 (2002). A jury instruction must correctly state the law.

*State v. Weaville*, 162 Wn. App. 801, 806, 256 P.3d 426 (2011).

Jury instruction 14 read:

> The duty of a governmental body to warn of a dangerous or unsafe
> roadway condition is not eliminated by *general knowledge* of a motorist of
> roadway conditions.

CP at 2625 (emphasis added). The county contends that instruction 14 contradicts a long

history of municipal law with the instruction's declaration that Conrad Malinak's general

knowledge of roadway conditions did not circumscribe the county's duty to warn. In this

vein, Spokane County principally relies on *Hansen v. Washington Natural Gas Co.*, 95

Wn.2d 773, 632 P.2d 504 (1981) and *Tanguma v. Yakima County*, 18 Wn. App. 555, 569

P.2d 1225 (1977). The county also attacks the term "general knowledge" as "extremely

vague." Finally, the county maintains that the instruction constituted a comment on the

evidence by the trial court.

We review the law of a municipality's duty with regard to road design and

maintenance, before analyzing decisions cited by Spokane County. Municipalities have a

31

duty to exercise reasonable care to keep their public roadways in a condition reasonably safe for ordinary travel. *Keller v. City of Spokane*, 146 Wn.2d at 249 (2002). This duty may require a county to post warning signs or erect barriers if a condition along the roadway renders travel inherently dangerous or is of such a character as to mislead a traveler exercising reasonable care. *Ruff v. King County*, 125 Wn.2d 697, 705, 887 P.2d 886 (1995). A municipality holds a duty to address dangerous sight obstructions caused by roadside vegetation. *Wuthrich v. King County*, 185 Wn.2d 19, 26, 366 P.3d 926 (2016).

Spokane County relies on the principle that a person cannot complain of a lack of warning of a danger of which he has knowledge. *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d at 778 (1981); *Tanguma v. Yakima County*, 18 Wn. App. at 559 (1977). When later addressing the county's proposed jury instruction D-23, we analyze whether this principle of law stands the test of time. For purposes of the validity of jury instruction 14, we note that any knowledge must be specific and not general in order for the municipality to avoid liability. *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 856, 751 P.2d 854 (1988); *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 395, 558 P.2d 811 (1976). The question of whether a warning is needed is a question of fact. *Tanguma v. Yakima County*, 18 Wn. App. at 559 (1977).

In forwarding its assignment of error to jury instruction 14, Spokane County contends that a municipality holds the same duty to act reasonably as imposed on private

parties.  The county then promotes principles of law that excuse a private party, such as a product manufacturer, supplier of chattels, or private landowners, of a duty to warn of a condition if the condition is open, apparent, or known to a user.  We decline to rely on product liability and premise liability decisions, since ample Washington decisions address a municipality's duty to warn.

We discuss the two Washington cases on which Spokane County principally relies.  In *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d 773 (1981), Gudrun Hansen sued the city of Seattle and the gas company for injuries sustained when she slipped on a plank placed in the middle of a street to cover an excavation.  Hansen had jaywalked diagonally across the street to catch a bus.  The gas company had placed barricades on both sides of the street near the plank, and a gas company truck had warned of obstructions in the street.  The trial court granted the city and the gas company judgment notwithstanding a jury verdict in favor of Hansen.  The Supreme Court affirmed the superior court.  The high court concluded that the gas company had no reason to expect pedestrians would use the area of the street where it laid the plank.  The court held that the city had no duty to maintain a warning sign because no evidence showed the presence of an inherent danger or of Hansen being misled.  Hansen's testimony established she "was fully aware of the situation in the street." *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d at 780.  She totally disregarded all warnings.  The court added that, when the condition is known, the city need not erect any sign or barrier.

In *Tanguma v. Yakima County*, 18 Wn. App. 555 (1977), this court recognized the rule that a person cannot complain of lack of a warning of a danger of which she has knowledge. Immediately after Ninfa Tanguma drove onto a narrow bridge, she saw a pickup truck coming in the opposite direction. She claimed the truck occupied more than half of the bridge. She steered to her right to avoid the truck and drove off the bridge into an irrigation canal. Tanguma contended that the county failed to post a warning that the bridge did not allow passage of two cars. The trial court granted summary judgment to the county, and this court reversed. The county emphasized that Tanguma had driven across the bridge many times and thus the failure to warn her could not serve as the proximate cause of the accident. This court, however, focused its attention on the conduct of the pickup truck driver. The court noted that, had the pickup driver seen a warning sign before entering the bridge, the driver could have stopped before entering the bridge or stayed far to his side of the bridge.

*Tanguma v. Yakima County* helps Spokane County little because this court did not directly address whether the injured party's past use of the bridge imputed knowledge to her of the narrowness and danger of the bridge. The court did not mention that it would have affirmed the dismissal if Ninfa Tanguma saw the pickup truck before entering the bridge. In *Hansen v. Washington Natural Gas Co.*, Gudrun Hansen entered an area where she did not belong. The gas company erected signs and barriers. No expert testified that steps taken by the gas company to barricade the street and to warn of the

danger failed to render the area safe. The court reasoned that Hansen knew of the danger. The courts in *Tanguma v. Yakima County* and *Hansen v. Washington Natural Gas Co.* never discussed the difference between specific and general knowledge.

We deem *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849 (1988) and *Smith v. Acme Paving Co.*, 16 Wn. App. 389 (1976) more pertinent. In *Wojcik v. Chrysler Corp.*, William Wojcik suffered serious injuries when he lost control of the automobile he drove on a Kitsap County road, and the car struck a utility pole. He alleged the county to be negligent in improperly striping the centerline of the roadway to warn motorists against passing. Wojcik first refrained from passing a forward car because of a double yellow "no passing" stripe in the road. When the stripe ended, he started to pass and then saw a car coming in the opposite direction that he did not earlier view because of a dip in the road. He quickly corrected to return to his own lane when he lost control of his vehicle. Wojcik's expert witness, Ed Stevens, averred that the double yellow line should have extended further. The trial court granted summary judgment to the county, and this court reversed.

On appeal, in *Wojcik v. Chrysler Corp.*, Kitsap County argued that the lack of warning striping did not proximately cause the accident because William Wojcik was familiar with the road. Wojcik conceded he generally knew the road and that the road contained a dip and a curve at the location of the accident. The county cited the rule that a person cannot complain of a lack of warning of a danger about which he holds

35

knowledge. This court qualified the rule with the principle that the knowledge must be specific and not general. No one had asked Wojcik if he knew the dip in the road could obscure his view of oncoming traffic. This court reversed summary judgment in favor of Kitsap County.

In *Smith v. Acme Paving Co.*, 16 Wn. App. 389 (1976), this court also reversed a summary judgment dismissal of a complaint for injuries in an automobile accident brought against a municipality, the city of Vancouver. Plaintiff Robert Smith struck a pole situated during construction in the middle of the road. Smith alleged that the city should have erected, but failed to erect, a sign warning of the pole or placed a barricade in front of the pole. Smith testified that he knew of the existence of poles in the road, but he did not know the exact position of the pole struck by him. Therefore, at a minimum, a question of fact arose as to whether Smith possessed specific knowledge of the danger that caused his injury.

Spokane County highlights that this court, in *Wojcik v. Chrysler Corp.*, addressed proximate causation rather than the municipality's duty to warn when discussing general versus specific knowledge. In turn, Spokane County impliedly contends that its trial court erred when framing instruction 14 in terms of duty rather than proximate cause. We agree with the county that this court discussed the difference between specific knowledge and general knowledge in terms of whether William Wojcik's purported knowledge of the danger constituted a supervening cause of his accident that absolved

Kitsap County of liability. This court, in *Smith v. Acme Paving Co.*, also addressed the extent of Robert Smith's knowledge of poles in the middle of the road in terms of proximate cause. Still, the statements of law that come from *Wojcik* and *Smith* and incorporated by Spokane County's trial court in jury instruction 14 encompass a municipality's duty as much as the concept of proximate cause. Duty and proximate cause often intertwine because of their links to policy considerations. *Hartley v. State*, 103 Wn.2d 768, 781, 698 P.2d 77 (1985).

Although Spokane County identifies in the trial record where it objected to the giving of jury instruction 14, the county fails to isolate in the record where it complained about instruction 14 addressing proximate cause rather than duty. The county does not identify any request to the trial court to reframe the language of instruction 14 into a proximate cause instruction. Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000).

*Smith v. Acme Paving Co.* and *Wojcik v. Chrysler Corp.* support jury instruction 14 as being a correct statement of the law. Other courts also recognize that knowledge of general conditions in the vicinity of the accident does not necessarily equate to knowledge and appreciation of the danger that caused the accident. *Armagast v. Medici Gallery & Coffee House, Inc.*, 47 Ill. App. 3d 892, 365 N.E.2d 446, 451, Ill. Dec. 208 (1977); *Davidson v. International Shoe Co.*, 427 S.W.2d 421, 424 (Mo. 1968).

Jury instruction 14 allowed Conrad Malinak and Madelynn Tapken to argue that Spokane County had a duty to warn Malinak of the difficult right-hand turn at the Waverly Y and the need to slow one's speed because of his lack of knowledge that the hawthorn bush obstructed the extent of the curve. The instruction allowed the county to argue it lacked a duty to warn Malinak because Malinak knew of the dangers in the curve. The jury, in turn, could resolve the question of fact as to the extent of Malinak's knowledge of any danger at the Waverly Y and whether that knowledge constituted specific knowledge. Thus, we hold that the trial court did not err in delivering jury instruction 14.

The county complains about the term "general knowledge" in jury instruction 14 being vague and undefined. We concede the term suffers some vagary. Nevertheless, we note the distinction between "specific knowledge" and "general knowledge" made in *Wojcik v. Chrysler Corp.*, 50 Wn. App. at 856 and *Smith v. Acme Paving Co.*, 16 Wn. App. at 395. Specific knowledge concerns knowing of the precise danger that led to the vehicle accident. General knowledge entails having driven in the area before and having some, but limited, familiarity with the area.

We decline a philosophical discourse of the nature of knowledge and a discussion of the difference between general and specific knowledge. A jury is capable of assessing a difference between "general knowledge" and "specific knowledge" in the context of the conditions in the environs of a motorcycle accident. The expressions "general,"

"specific," and "knowledge" are all commonly used and understood words. The jury never asked the trial court to define the terms. An instruction need not define terms of ordinary understanding or self-explanatory words. *State v. Brown*, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997).

Although Spokane County identifies in the trial record where it objected to the giving of jury instruction 14, the county fails to isolate in the record where it complained to the vagueness of the term "general knowledge." The county does not suggest that it asked the trial court to define the term for the jury. Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. at 519 (2000). Nor does the county cite on appeal any case law that rejects language in jury instruction 14 as vague. This court does not review issues not argued, briefed, or supported with citation to authority. RAP 10.3(a)(6); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012).

In a related argument, Spokane County contends that jury instruction 14 failed to inform the jury as to the conditions under which the county held an obligation to warn. We disagree. Instruction 14 informed the jury that the county possessed a duty to warn of "a dangerous or unsafe roadway condition." CP at 2625. Jury instructions 11 and 12 echoed this statement of the law. The law, in turn, assigned the task to the jury to decide, based on descriptions of the location and based on expert testimony, whether the Waverly

Y constituted a dangerous area that required additional warnings.

Finally, Spokane County contends that jury instruction 14 constituted a comment on the evidence by the trial court. Again, Spokane County identifies no portion of the trial record wherein it objected to the instruction as being a comment on the evidence. Spokane County complains that the instruction emphasized the county's duty over the duties of Conrad Malinak and Madelynn Tapken. The county relies on the rule that the trial court commits error when the instructions as a whole repetitiously cover the application of a rule as to grossly overweight their total effect on one side and thereby favor that one party to the explicit detriment of the other party even though each instruction considered separately might be correct. *Samuelson v. Freemen*, 75 Wn.2d 894, 897, 454 P.2d 406 (1969); *Brown v. Dahl*, 41 Wn. App. 565, 579, 705 P.2d 781 (1985).

We disagree with Spokane County's characterization of the weight of the jury instructions. The instructions began, contrary to standard instructions and to the disfavor of Conrad Malinak and Madelynn Tapken, with directing the jury to assess the comparative fault of Malinak and Tapken. More importantly, numerous instructions emphasized Conrad Malinak's duties to observe his surroundings, to obey traffic laws, and to travel at a safe speed. If anyone should complain about an emphasis of instructions, that party should be Malinak, not Spokane County.

In its brief, Spokane County analyzes the facts in an apparent attempt to establish that Conrad Malinak knew from previous travel on South Prairie View Road of the dangerous condition at the Waverly Y or that any reasonable driver could have observed any danger present at the right-hand curve even without experience in riding on the rural road. Thus, the county may argue that Malinak specifically knew of the danger that led to the accident. Nevertheless, the county does not challenge the sufficiency of the evidence to impose liability on it or to give the jury instruction. Ample evidence supported a conclusion that Conrad Malinak reasonably did not appreciate the danger of the sharp right-hand turn. Just because one remembers an enjoyable experience in driving on a rural road does not mean that one remembers the details of curves and turns in that road, especially when the road travels through the rolling gullies and gulches of lower Spokane County. Malinak's erroneous belief that he turned to the right to travel to Waverly confirms a lack of specific knowledge of the Waverly Y.

*Assignment of Error 2: Whether the trial court erred when refusing to deliver Spokane County's proposed instruction D-23?*

*Answer 2: No.*

Next, Spokane County assigns error to the failure to give its proposed jury instruction D-23. The instruction declared:

> The County has no duty to warn a road user about a road hazard if the hazard is open, apparent, and known to the road user. Whether a hazard

41

is open and apparent depends on whether the road user knew, or had reason to know, the full extent of the risk posed by the condition.

CP at 2343. Proposed instruction D-23 is not found in the Washington Pattern Jury Instructions.

The trial court's refusal to deliver Spokane County's proposed instruction raises the question of whether a municipality avoids liability for a dangerous or unsafe roadway condition if the condition is open and known to the traveler. We rule that, based on *Keller v. City of Spokane*, 146 Wn.2d 237 (2002), the open nature or knowledge of the hazard by the road user does not eliminate the duty possessed by the municipality, but instead may reduce the municipality's responsibility for damages based on the traveler's comparative fault. Because the county's proposed jury instruction does not correctly state the law, the trial court committed no error by refusing to present the instruction to the jury. To repeat, a jury instruction must correctly state the law. *State v. Weaville*, 162 Wn. App. at 806 (2011).

In arguing for proposed instruction D-23, the county contends that, based on facts shown at trial, it should have been permitted to argue with proper instructions, as a question of fact, that its duty to maintain the roadway in a reasonably safe condition did not include a duty to warn Conrad Malinak of a turn that he could see and had previously experienced. According to Spokane County, no evidence showed that Malinak was misled about his inability to see the full turn.

42

In advocating for proposed instruction D-23, Spokane County asserts many of the same arguments we rejected when discussing jury instruction 14. We again reject the invitation to analyze the county's duty as if the county acted as a product manufacturer, supplier of a chattel, or private landowner.

Spokane County again relies primarily on *Hansen v. Washington National Gas Co.*, 95 Wn.2d 773 (1981). We can distinguish the facts of *Hansen v. Washington Natural Gas Co.* Gudrun Hansen jaywalked diagonally across the street to catch a bus and thus could be considered a trespasser; whereas Conrad Malinak rode his motorcycle in an area of the road in which the law permitted his presence. Washington Natural Gas had placed barricades on both sides of the street near the plank where Hansen fell, and a gas company truck had warned of obstructions in the street. The Supreme Court concluded that the gas company had no reason to expect pedestrians would use the area of the street where it laid the plank. Spokane County knew that motorcycles employed the Waverly Y. Hansen testified that she "was fully aware of the situation in the street." *Hansen v. Washington Natural Gas Co*, 95 Wn.2d at 780.

Still, to the benefit of Spokane County, the *Hansen* court declared that, when the condition is known, the city need not erect any sign or barrier. Although Conrad Malinak denied full knowledge of the dangerous right turn at the Waverly Y, some evidence suggested that he knew or should have known of the dangerous condition, such that a question of fact arose as to whether the condition was open and obvious. Such a question

43

of fact would warrant a jury instruction in favor of Spokane County if the teaching of

*Hansen* remained authoritative. This court's decision, in *Tanguma v. Yakima County*, 18

Wn. App. 555 (1977), also supports the rule that a person cannot complain of a lack of a

warning of a danger of which she has knowledge.

We deem *Keller v. City of Spokane*, 146 Wn.2d 237 (2002) rather than *Hansen v.*

*Washington National Gas Co.*, 95 Wn.2d 773 (1981) controlling. Under *Keller v. City of*

*Spokane*, evidence that a hazardous condition was open, apparent, or known to the

traveler lacks relevance to the municipality's duty, but only to a motorist's comparative

fault. In *Keller*, traffic traveling on Freya Street in Spokane was controlled by stop signs

at the street's intersection with Wellesley Street. Walter Balinski, while traveling on

Freya Street, stopped at the stop sign. Casey Keller then journeyed on his motorcycle on

Wellesley Street. Testimony varied as to the speed of Keller with Keller cycling as fast

as 80 miles per hour or as slow as 30 miles per hour. Balinski looked in both directions,

after stopping at the control sign, before pulling into the intersection. Keller crashed into

Balinski's car and suffered severe injuries. Keller sued the city of Spokane in addition to

Balinski. Keller claimed the city should have erected stop signs also for travelers on

Wellesley Street in order to render the intersection a four-way stop. In essence Keller

argued that the city should have erected a stop sign to warn him of the dangerous

condition. Keller emphasized that numerous previous accidents rendered the intersection

dangerous. The city argued that it had no duty to Keller because Keller did not exercise

ordinary care when approaching the Freya Street intersection. The trial court instructed the jury that the "city has a duty to exercise ordinary care in the signing and maintaining of its public streets to keep them in a condition that is reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety." *Keller v. City of Spokane*, 146 Wn.2d at 241. Keller excepted to the instruction, while arguing that the jury must determine the city's duty and breach of duty independent of whether he exercised ordinary care.

The Court of Appeals, in *Keller v. City of Spokane*, held the jury instruction to be erroneous and prejudicial to Casey Keller. The Washington Supreme Court agreed. The Supreme Court held that the municipality's duty to properly warn extends to all persons regardless of the person's own fault. In essence, if the road is not safe for a reasonable or safe driver, the municipality breaches its duty even to a reckless driver. A municipality holds a duty to keep its streets safe for those who use the roads unlawfully. The Supreme Court thereby approved what has become 6 WPI 140.01, which Madelynn Tapken's trial court delivered as jury instruction 11.

*Keller v. City of Spokane* entails similar facts and contentions to those decisions Spokane County cites on appeal. Although a third party entered the intersection and caused Casey Keller's injuries, the city of Spokane, like the county of Spokane in our appeal, argued that the driver entered the intersection too fast and should have been able to see any danger without the posting of a sign.

One might deem *Keller v. City of Spokane* inconsistent with *Hansen v. Washington Natural Gas*. The *Keller* Supreme Court distinguished *Hansen* on the basis that *Hansen* involved the sufficiency of evidence and not the propriety of a jury instruction.

This court, in *Unger v. Cauchon*, 118 Wn. App. 165, 73 P.3d 1005 (2003), read *Keller v. City of Spokane* to "require the court to determine, or properly instruct a jury to determine, that a municipality's duty is independent of the plaintiff's negligence." 118 Wn. App. at 176. In *Unger*, the court held that Island County owed the plaintiff a duty, regardless of the plaintiff's negligent conduct, to make the road safe for ordinary travel.

Even before the Supreme Court decision in *Keller v. City of Spokane*, a line of Washington decisions held that the knowledge of the plaintiff of a dangerous condition in either a sidewalk or a road does not excuse the municipality from a duty to that plaintiff to maintain a safe road or sidewalk. *Blasick v. City of Yakima*, 45 Wn.2d 309, 313, 274 P.2d 122 (1954); *Shearer v. Town of Buckley*, 31 Wash. 370, 374, 72 P. 76 (1903); *Millson v. City of Lynden*, 174 Wn. App. 303, 311, 298 P.3d 141 (2013). Instead, the plaintiff's knowledge of the condition reflects on the plaintiff's comparative fault. *Millson v. City of Lynden*, 174 Wn. App. at 311; 19 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 54:156, at 582 (3d ed. rev. 2014).

Based on jury instructions delivered by the trial court, Spokane County could argue to the jury that it maintained the Waverly Y intersection in a condition safe for the

ordinary traveler and therefore breached no duty to Conrad Malinak and Madelynn Tapken. Spokane County could also argue that any breach of duty was not the proximate cause of the accident because Malinak knew or could see the degree of the right turn in advance. Finally, Spokane County could tell the jury that Conrad Malinak held specific knowledge and that his specific knowledge constituted comparative fault. Therefore, the trial court's instructions permitted Spokane County to present to the jury those arguments the law availed it.

Emergency Doctrine

*Issue 3: Whether any error with respect to the trial court's instruction 13 would be harmless error such that this court need not address Spokane County's assignment of error as to the propriety of the instruction?*

*Answer 3: Yes.*

Spokane County next assigns error to the trial court's delivery, in favor of Conrad Malinak and Madelynn Tapken, of jury instruction 13, the Washington pattern instruction on the sudden emergency doctrine. The instruction read:

> A person who is suddenly confronted by an emergency through no negligence of his or her own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though it is not the wisest choice.

6 WPI 12.02; CP at 2624. Tapken and Malinak contend that this court need not address this assignment of error because any error could not be harmful. According to Tapken

47

and Malinak, the jury concluded that the sudden emergency doctrine did not apply to their conduct because the jury found both negligent. Thus, the instruction benefitted them none. We agree with Tapken and Malinak.

Only prejudicial error requires reversal, and error is prejudicial only if it affected the trial outcome. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983); *Keller v. City of Spokane*, 146 Wn.2d at 249. We conclude that any error in giving the emergency instruction to Spokane County's jury did not affect the trial outcome. The instruction directed the jury to declare Conrad Malinak or Madelynn Tapken absent of negligence if the jury deemed the emergency theory applied to their respective conduct. Conversely the law declares the sudden emergency doctrine inapplicable if a party acted negligently in creating the emergency. *Sandberg v. Spoelstra*, 46 Wn.2d 776, 782, 285 P.2d 564 (1955). Thus, the jury necessarily rejected the theory that either Malinak or Tapken confronted an emergency when it found each of them negligent.

Spokane County argues that, even if the jury imposed comparative fault on Madelynn Tapken and Conrad Malinak, jury instruction 13 still harmed it. The county astutely postulates that, without the sudden emergency instruction, the jury may have imposed a higher degree of fault on Malinak or Tapken. Nevertheless, the instruction directed the jury to absolve Tapken and Malinak of all responsibility, not to reduce the degree of fault, if they faced a sudden emergency. The law presumes that the jury follows the court's instruction. *State v. Smith*, 144 Wn.2d 665, 679, 30 P.3d 1245, 39

48

P.3d 294 (2001).

We deem *McCluskey v. Handorff-Sherman*, 68 Wn. App. 96, 841 P.2d 1300 (1992), *aff'd on other grounds*, 125 Wn.2d 1, 882 P.2d 157 (1994), controlling. Wallace McCluskey died in a two-car collision on State Road 900. His widow, Nadine McCluskey, brought action against the State of Washington and Timothy Handorff–Sherman, the driver of the other car. A jury found both defendants negligent and awarded McCluskey a large verdict.

Nadine McCluskey's claim arose from Timothy Handorff-Sherman driving on State Route 900. He drove in the inside lane of a four-lane highway. Handorff-Sherman passed a forward car by moving into the right-hand lane. He accelerated in order to complete the passing maneuver and found himself heading downhill toward a "dip" in the road where water had collected. He moved back toward the left-hand lane as he continued to accelerate. His Mustang's tires lost traction on the wet roadway surface, and the car slid across the median into oncoming traffic, striking Wallace McCluskey's car. Nadine McCluskey sued Handorff-Sherman for negligently operating his vehicle and the State for maintaining a hazardous and unsafe roadway.

On appeal, in *McCluskey v. Handorff-Sherman*, the State argued that the trial court improperly delivered a sudden emergency instruction in Timothy Handorff-Sherman's favor. The State argued that Handorff-Sherman never confronted an emergency or that his negligence created any emergency. This court held the giving of the jury instruction

49

harmless, assuming the instruction to be error, because the jury rejected the emergency

theory when it found Handorff-Sherman at fault.

Evidence of Earlier Accidents

*Issue 4: Whether this court's previous ruling precluded the trial court, based on the law of the case doctrine, from allowing evidence of prior accident history at the Waverly Y?*

*Answer 4: No.*

Spokane County contends that, on remand, the trial court violated this appellate

court's earlier opinion and thereby breached the law of the case doctrine. The county

complains that the trial court on remand conditioned the exclusion of accident history

evidence on the county admitting it knew the Waverly Y intersection to be dangerous, not

merely that it knew the hawthorn bush obstructed a southbound driver's view.

Conversely, Madelynn Tapken and Conrad Malinak seek to uphold the trial court's

admission of evidence of earlier accidents on the ground that Spokane County refused to

admit that the hawthorn bush obstructed Malinak's vision of the sharpness of the right

curve at the intersection. Tapken and Malinak also assert that the trial court's ruling

admitting accident history on remand to prove dangerousness does not conflict with this

court's decision in the first appeal, and, therefore, the law of the case doctrine does not

apply. We do not address Tapken's and Malinak's second contention because of

Spokane County's refusal to admit that the hawthorn bush blocked vision of the extent of

the curve. We do not decide whether we previously upheld the inadmissibility of

evidence of earlier accidents as long as Spokane County agreed to the hawthorn bush

posing an obstruction, despite denying the dangerousness of the obstruction. Nor do we

decide that any such ruling was correct.

During the first appeal, this court addressed Madelynn Tapken's and Conrad

Malinak's challenge to the first trial judge's decision to exclude evidence of prior

accidents, and we affirmed the decision based on Spokane County's admission that it

knew of the bush and its partial obstruction of southbound travelers despite the county

refusing to admit the dangerousness of the condition. This court wrote:

> Prior to trial, the County admitted that it had notice that the large
> hawthorn bush obscured the intersection, although it disputed that this
> condition was dangerous. At trial, the County equivocated somewhat. It
> disputed the degree to which the hawthorn bush actually obscured the yield
> sign and the intersection, but it certainly did not claim to have lacked notice
> of the condition.
> . . . .
> The relevant notice is notice of the alleged dangerous condition—
> which the County admitted—not whether the condition actually was
> dangerous.

*Tapken v. Spokane County*, No. 32909-7-III, slip op. at 14; CP at 53.

On remand, Madelynn Tapken asked Spokane County to admit that the hawthorn

bush obstructed Conrad Malinak's vision of the extreme right curve at the Waverly Y.

The county denied any obstruction. Spokane County may argue that it tried to concede a

partial obstruction, but the court improperly ordered it to answer the request for

51

admission unequivocally.  Nevertheless, the county assigns no error to the trial court's order demanding the unequivocal answer.

Even if the trial court permitted the county to respond with a concession of a partial obstruction, such an admission does little to assist Madelynn Tapken, the trial court, and the jury in determining Spokane County's position as to the obstruction.  By admitting only a partial obstruction, the county could later argue to the jury that the bush only obstructed five percent, one percent, or even 0.1 percent of the vision Malinak needed to calculate the degree of the curve and the need to slow.  Based on the county's equivocation, Madelynn Tapken deserved the opportunity to show that the bush obstructed other driver's views to the extent that drivers could not discern the curvature of the right turn and accidents resulted.

Under the law of the case doctrine, a trial court does not have discretion to disregard or contradict a holding of the appellate court.  *Lodis v. Corbis Holdings Inc.*, 192 Wn. App. 30, 57, 366 P.3d 1246 (2015).  Nevertheless, a trial court may reopen a previously resolved question if the evidence on remand is substantially different or if a manifest injustice would otherwise result.  *Karanjah v. Department of Social & Health Services*, 199 Wn. App. 903, 916, 401 P.3d 381 (2017); *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. at 55.

This court's prior unpublished decision assumed that Spokane County conceded that the hawthorn bush obstructed Conrad Malinak's view of the sharp right turn or at

least a significant portion of the bush such that Malinak could not fully judge the degree

of the curve.  On remand, Spokane County eventually denied any obstruction of the view

of the turn.  The facts we assumed turned false.  Therefore, we hold the law of the case

doctrine did not preclude admission of evidence of earlier similar accidents.

*Issue 5: Whether evidence of prior accident history at the Waverly Y was*

*admissible?*

*Answer 5: Yes.*

In addition to arguing that the trial court should not have admitted evidence of

other accidents based on our prior decision and the law of the case, Spokane County

maintains that the trial court committed substantive error because the evidence of the

prior accidents was not substantially similar and was therefore irrelevant.  In response,

Madelynn Tapken and Conrad Malinak assert that the trial court did not abuse its

discretion in finding that the three prior accidents at Waverly Y admitted as evidence

were comparable to Tapken's and Malinak's September 2011 accident.

A trial court's ruling on the admission of evidence or a motion in limine is

reviewed for an abuse of discretion.  *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615

(1995).  This court will reverse a trial court's evidentiary ruling when no reasonable

person would take the view adopted by the trial court.  *Peralta v. State*, 187 Wn.2d 888,

894, 389 P.3d 596 (2017).

Evidence of a prior accident that occurred under the same or substantially similar circumstances is admissible for the purpose of showing a dangerous or defective condition and the defendant's notice of such condition. *Davis v. Globe Machine Manufacturing Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984); *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 189, 381 P.2d 742 (1963); *Turner v. City of Tacoma*, 72 Wn.2d 1029, 1036, 435 P.2d 927 (1967); *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833, 835, 431 P.2d 212 (1967); *Tonning v. Northern Pacific Railway Co.*, 180 Wash. 374, 378, 39 P.2d 1002 (1935). In determining admissibility, the accident giving rise to the present suit must be substantially similar to the prior accidents. *Blood v. Allied Stores Corp.*, 62 Wn.2d at 189. Each case presents an impromptu question and leaves all collateral requirements as to similarity to the trial court's informed decision. *Blood v. Allied Stores Corp.*, 62 Wn.2d at 189.

A philosopher would savor the quest of defining and discerning "substantial similarity" because of the nebulosity of the phrase. The test's vagueness may suggest we afford the trial court substantial deference in its rulings as to earlier accidents.

Spokane County maintains that the three prior accidents allowed into evidence by Madelynn Tapken's trial court were not substantially similar to her accident. According to the county, the February 18, 1995 accident involved an abandoned vehicle and therefore the road and weather conditions at the time of the accident were not determined. The accident occurred sixteen years earlier and thus was too remote in time. Spokane

County contends that we do not know if the hawthorn bush obstructed the view in 1995. Spokane County highlights that the December 12, 2007 accident involved a single vehicle roll-over while snow and ice covered the roadway. Meanwhile, the September 5, 2009 accident involved a motorist traveling through the intersection at 60 m.p.h., and the driver testified that gravel on the road contributed to his accident. Unlike the three prior accidents, the September 28, 2011 accident at issue in this appeal did not include bad weather or unknown road conditions.

We review a handful of Washington decisions to glean factors in determining whether the trial court abused its discretion in admitting the three prior Waverly Y accidents. In *Blood v. Allied Stores Corp.*, 62 Wn.2d 187 (1963), Mary Ann Blood sued the store for injuries sustained when she fell from an escalator. On appeal, she contended the trial court erred when excluding evidence of earlier accidents from an escalator at the store. The Supreme Court refused to entertain the assignment of error because of the paucity of information as to the circumstances of the earlier falls that disabled the court from assessing substantial similarity.

In *Turner v. City of Tacoma*, 72 Wn.2d 1029 (1967), a teenage pedestrian, while walking on a city sidewalk in the fog, struck a fire escape that extended into and obstructed the sidewalk. The Supreme Court reversed a directed verdict in favor of the city. The trial court had held the teenager contributorily negligent as a matter of law. The Supreme Court mentioned that the teenager could present evidence of former

accidents caused by contact with the fire escape to show the obstruction in the sidewalk to be a dangerous condition.

In *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833 (1967), Harry Toftoy sued for injuries sustained when he fell dancing on a dance floor. Evidence showed that the floor, of portable construction, occasionally separated and left cracks. One person suffered serious injury on the dance floor two months earlier and others had caught heels in the crack and had stumbled. On appeal, the operator of the dance floor contended the trial court committed error by allowing evidence of the earlier injury and previous stumbles. The Supreme Court affirmed the trial court's admission of the evidence. The evidence consisted of prior similar occurrences "not too remote in time or circumstance to be probative of the alleged continuing defect in the dance floor." *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d at 836.

In *O'Dell v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 Wn. App. 817, 496 P.2d 519 (1972), a motorcyclist struck the side of a train as the train passed through a North Bend grade crossing. A dense fog blanketed the early morning of the collision. William O'Dell emphasized that a house partially obstructed the view of travelers in his direction. Evidence showed an accident at the same crossing five years earlier, three prior near accidents, and one subsequent accident. This court held that the trial court did not abuse its discretion in permitting evidence of the earlier near accidents. The court did not expressly address admission of evidence of the actual prior accident.

56

The trial court had first determined the near accidents to be "substantially similar."

*O'Dell v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 Wn. App. at 826. This

court, however, did not mention the similar circumstances. The court held that the

evidence was not admissible to show notice of a dangerous condition but to show the

existence of the hazardous condition. This court held that O'Dell had not presented

sufficient evidence to compare the subsequent accident to his accident, and, thus, on

remand, the trial court needed to explore any similarity before admitting evidence of the

subsequent accident.

In *Boeing Co. v. State*, 89 Wn.2d 443, 572 P.2d 8 (1978), Boeing sought damages

from the State for damage to jet engines sustained when a truck carrying engines drove

along a twelve-foot underpass and the top of one engine struck the underside of the

underpass, causing the other engine to fall to the roadway. Evidence showed a history of

frequent accidents at the underpass in spite of warning signs and despite the State's

knowledge of the need for a more effective warning system. In other similar

circumstances, government entities had devised warning systems to meet the problem.

On appeal, the State assigned error to the trial court's admission of evidence of accidents

occurring at the underpass before and after Boeing's accident. The State contended that

Boeing failed to show that the circumstances of the other accidents were similar. Boeing

relied on the State's evidence of past occurrences, and those records failed to reveal the

nature of the signing then in place, the time of day or night, or the direction in which the

vehicle involved was traveling.  The Supreme Court held that the missing information did not render the evidence inadmissible.  Other evidence showed that the State understood that most of the accidents were of the type experienced by Boeing.

As the *Boeing Co. v. State* court emphasized, only the material facts need be substantially similar.  The fact that Conrad Malinak and Madelynn Tapken traveled southbound on Prairie View Road and failed to negotiate the right-hand turn are material facts in common with the three prior accidents.  More importantly, on each occasion, the car traveling southbound went across the field and tumbled down the embankment on the south side of the intersection.  The presence of the hawthorn bush and the quick sharp right turn also remained the same throughout all the accidents.  Madelynn Tapken's experts considered these factors important when opining that the county acted unreasonably by failing to warn of the curve.  Thus, even though the trial court did not know the road conditions of the 1995 accident or whether the collision occurred during the day or at night, the court did not abuse its discretion when admitting the testimony.

In addition, Spokane County considered the 2007 and 2009 accidents substantially similar to the subject accident when preparing to apply for a state grant to address roadways with "a history of serious and fatal crashes."  CP at 1991.  The county identified those accidents as demonstrating such a history at the Waverly Y intersection and as evidencing a need to realign the intersection.

58

Madelynn Tapken's Comparative Fault

*Issue 6: Whether Madelynn Tapken preserved for appeal her contention that*

*Spokane County presented insufficient evidence to permit the jury to find her*

*comparatively at fault?*

*Answer 6: No.*

By way of a cross appeal, Madelynn Tapken contends that, to support its

comparative fault defense, Spokane County needed to present evidence that Tapken

exercised conscious volition when Conrad Malinak suddenly turned left and her upper

body moved right and that she had sufficient time to appreciate and react to Malinak's

sudden action. Tapken argues that the county failed to present evidence sufficient to

support findings of either of the two facts.

Before turning to the merits of Madelynn Tapken's cross appeal regarding

sufficiency of the evidence, this court must determine if she preserved the alleged error.

Spokane County argues this court should not address Tapken's cross appeal for several

reasons. First, Tapken failed to forward a CR 50 motion to dismiss the defense of

comparative fault at the conclusion of the evidence at the second trial. Second, Tapken

never objected to the jury instruction directing the jury to adjudge comparative fault, and,

thus, the law of the case precludes review. Third, Tapken invited error by proposing a

jury instruction and a verdict form that invited the jury to assess her comparative fault.

Fourth, this court's ruling in the earlier appeal denying dismissal of the defense stands as the law of the case. We agree we should not review the cross appeal.

Before the first trial, Madelynn Tapken moved for partial summary judgment on the issue of her comparative fault. The superior court denied Tapken's motion for partial summary judgment. In the first appeal, Tapken asked this court to review the denial of the motion. Spokane County objected to this court's review because this court usually does not entertain denials of summary judgment motions. Nevertheless, because the first trial court had granted Spokane County's CR 50 motion for judgment as a matter of law and Tapken had never received a trial on the merits of the county's defense such that she could challenge the sufficiency of the evidence, we reviewed Tapken's appeal of the summary judgment ruling. Now that Madelynn Tapken received a trial on the merits, Spokane County argues its defense of comparative fault is no longer properly before this court. The county emphasizes that Tapken failed to bring a CR 50 motion to dismiss at the conclusion of the second trial.

In response, Madelynn Tapken emphasizes that the trial court refused to entertain, on remand, her renewed summary judgment to dismiss the comparative fault defense. Nevertheless, the trial court qualified its ruling by declaring that Tapken could challenge the sufficiency of the evidence at the conclusion of trial if the evidence presented differed from the affidavit and deposition testimony presented to the court during the summary judgment motion. Because the facts presented at trial did not materially diverge from the

60

facts presented at summary judgment, Tapken argues she was barred from asserting a

CR 50 motion to dismiss for insufficiency of evidence at the end of trial. Thus, according

to Tapken, in fairness this court should now address the sufficiency of the evidence for

purposes of the defense.

Madelynn Tapken cites *Kaplan v. Northwestern Mutual Life Insurance Co.*, 115

Wn. App. 791, 804 n.6, 65 P.3d 16 (2003) for the proposition that a party is not required

to make a futile CR 50 motion to preserve error for review. She argues that, because

there was no material difference in the evidence at trial on remand, any motion for

judgment as a matter of law under CR 50 during or after trial was legally precluded and

would have been futile. In *Kaplan*, the court held no CR 50 motion at trial was required

to preserve the appeal of a denial of summary judgment because the decision turned

solely on an issue of substantive law, the interpretation of an insurance policy clause,

rather than disputed issues of material fact.

The denial of Madelynn Tapken's partial summary judgment motion by the

superior court before the first trial and this court's earlier affirmation of the denial on

appeal was not based on an issue of substantive law. Instead the rulings turned on issues

of material fact. Therefore, reliance on *Kaplan* is misplaced.

We note that Madelynn Tapken's argument that the evidence at trial did not vary

from the evidence before the trial court on summary judgment is self-defeating. This

reviewing court considered the same evidence when, during the first appeal, we ruled that

the trial court did not err when denying the summary judgment motion. Thus, the viability of the defense became the law of the case.

The law of the case doctrine is intended to afford a measure of finality to litigated issues. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. at 55 (2015). A court may reopen a previously resolved question if the evidence on remand is substantially different or if a manifest injustice would otherwise result. *Karanjah v. Department of Social & Health Services*, 199 Wn. App. at 916 (2017); *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. at 55 (2015). We observe no difference in the evidence on the question of Madelynn Tapken's comparative fault from the first to the second trial and Tapken claims the evidence to be similar, if not identical.

In addition, the law of the case doctrine also refers to the principle that jury instructions not objected to are treated as the properly applicable law for purposes of appeal. *State v. Hickman*, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998). Madelynn Tapken never objected to the jury instruction allowing the jury to assess comparative fault against her. Thus, the instruction became the law of the case.

## Conrad Malinak Damages

*Issue 7: Did the third trial judge reinstate Conrad Malinak's claim for medical expenses, and, if so, was the reinstatement error?*

*Answer 7: Yes and yes.*

On two grounds, Spokane County appeals the reinstatement, during the first day of

the second trial, of Conrad Malinak's damage claim for medical expenses. First, the county lacked a fair opportunity to rebut the reinstated claim. Second, the law of the case doctrine barred reinstatement. We agree with Spokane County based on its first contention and do not address the law of the case doctrine in this context.

At the conclusion of Conrad Malinak's case in the first trial, the trial court dismissed Malinak's action against Spokane County because the county never violated a duty to Malinak. The trial court also dismissed Malinak's damage claim for medical bills because of the lack of substantiation of the bills by a physician.

Conrad Malinak claims he appealed both rulings and this court reversed both rulings. His notice of appeal read broadly enough to include a challenge to the dismissal of his claim for medical bills. Nevertheless, Malinak assigned no error to the dismissal in his brief. Malinak did not argue, in his brief, that the trial court committed error when concluding that Malinak did not sustain his claim for special damages as a matter of law. This court will not review a claimed error unless it is (1) included in an assignment of error or clearly disclosed in the associated issue pertaining thereto and (2) supported by argument and citation to legal authority. RAP 10.3(a)(5), 10.3(g); *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986); *Vern Sims Ford, Inc. v. Hagel*, 42 Wn. App. 675, 683, 713 P.2d 736 (1986). Thus, this court did not review and never reversed the first trial court's ruling on special damages.

On this second appeal, Conrad Malinak refuses to characterize the third trial court

judge's ruling as "reinstating" his claim for medical bills. Malinak contends this reviewing court's first decision reinstated the claim. As already written, we disagree. This court reinstated *a* crossclaim against Spokane County, but we did not necessarily reinstate the claim for medical bills. Regardless of this court's decision on the first appeal, a second trial judge dismissed, redismissed, or refused to resurrect the claim for medical bills two months before the second trial. Therefore, although the word "reinstate" lacks criticality to this appeal, we note that the third trial judge on the first day of trial, not this court, allowed Malinak to proceed with his claim for special damages.

We question whether the third trial judge even ruled that Conrad Malinak could seek recovery for medical bills during the second trial. The trial judge never expressly so stated. Nevertheless, the parties thereafter assumed the trial judge granted Malinak a motion for reconsideration of the second trial court's ruling barring a claim for special damages, despite no motion being brought in writing or orally during the early days of the trial. The trial court instructed the jury on special damages.

The trial court decided to reinstate the claim for medical expenses after Spokane County moved to exclude records of medical bills because of the second judge's substantive ruling and to exclude testimony of Charles Morrison because of late disclosure. Conrad Malinak never filed a motion for reconsideration on the second trial judge's decision precluding an award. A motion for reconsideration requires certain procedures not followed by Malinak and permits granting of the motion only on grounds

not forwarded by Malinak. CR 59(a). Without any motion for reconsideration, Spokane County lacked any advanced warning that Malinak sought to reinstate his claim. A party's opportunity to respond to a potentially dispositive motion is deeply imbedded in the concept of fair play and justice. 56 Am. Jur. 2d *Motions, Rules, and Orders* § 32 (2019). The right to notice and an opportunity to be heard on motions in a lawsuit is critically important to the nonmovant, and its omission by the court cannot be considered of little consequence. *Craver v. Craver*, 298 N.C. 231, 258 S.E.2d 357, 362 n.7 (1979).

Spokane County relies primarily on *Green v. Hooper*, 149 Wn. App. 627, 205 P.3d 134 (2009) and *Hubbard v. Scroggin*, 68 Wn. App. 883, 846 P.2d 580 (1993), when contending it lacked a fair opportunity to respond to the resurrected claim. Both decisions differ notably from the procedural facts in our trial court proceedings. Still, this court, in both *Green v. Hooper* and *Hubbard v. Scroggin*, reversed late additions to claims asserted by the plaintiff. The two decisions' underpinnings promote due process protections of sufficient notice and opportunity to respond when a court reinstates a claim.

In *Hubbard v. Scroggin*, 68 Wn. App. 883 (1993), Darla H. Hubbard sued Ann Miller Scroggin for a $2,000 down payment on a house. Hubbard voluntarily dismissed her claim after resting her case, and the court thereafter entertained evidence on Scroggin's counterclaim for outrage. As a result of evidence heard during the trial on the cross-claim, the trial court reinstated Hubbard's claim and eventually awarded her the

$2,000. The trial court reasoned that issues regarding the $2,000 claim were raised again by Scroggin in the course of presenting her counterclaim for outrage. Thus, Scroggin consented to the court reconsidering that issue. This court reversed. We noted that the trial court maintains jurisdiction to reverse any ruling before entering a final judgment. Nevertheless, this court accepted Scroggin's contention that reinstatement of a voluntarily dismissed claim unfairly prejudiced her ability to present a defense. This court held the trial court to abuse its discretion when reinstating the claim. Scroggin lacked the opportunity to call any witness to rebut the claim.

*Hubbard v. Scroggin* may echo Spokane County's case on review in that the *Hubbard* trial court reinstated a claim on its own at the conclusion of the case. Although Conrad Malinak asked that Charles Morrison be permitted to testify about his medical bills, Malinak never expressly asked that he be able to recover the bills. Morrison's testimony concerning the bills could relate only to the extent of the treatment needed and, in turn, the pain and suffering experienced by Malinak. *Hubbard* differs from our case on review in that the trial court reinstated a claim at the conclusion of the trial. Malinak's trial court reinstated the claim on the first day of trial. Still, Spokane County entered a lengthy, difficult, and complicated trial on the reasonable expectation that Malinak could not recover special damages. The county reasonably relied on the second trial judge's ruling barring recovery for medical bills. Although Malinak offered to render Dr. Charles Morrison available for a deposition, Spokane County reasonably declined since

66

Malinak disclosed the expert untimely. Spokane County lacked an opportunity to hire an expert to review and possibly counter the opinions of Dr. Morrison.

In *Green v. Hooper*, 149 Wn. App. 627 (2009), Deral and Vicki Green brought action for ejectment and to quiet title by adverse possession to a portion of Susan and David Hooper's shorelands at Loon Lake. The trial court rejected the Greens' adverse possession claim but granted relief to the Greens on the basis of the doctrine of mutual recognition and acquiescence that the Greens never pled. The court considered the doctrine similar in nature to a lesser included offense in a criminal proceeding. The trial court also determined the Hoopers suffered no surprise or prejudice because evidence supporting both theories overlapped. On appeal, this court held that the trial court abused its discretion. When allowing an amendment to the complaint under CR 15(b), the trial court must address consent, notice, and prejudice. The opposing party must be allowed sufficient time to prepare his case on the new issues.

*Green v. Hooper* differs from our appeal in that the court allowed an amendment for a claim never pled. In Spokane County's appeal, the trial court reinstated a claim pled by Conrad Malinak. Still, in both cases the trial court allowed the plaintiff to proceed on a claim despite surprise to the opposing party and no time to conduct discovery and otherwise respond to the resurrected claim.

Because of the lack of notice to Spokane County, we vacate the award of damages to Conrad Malinak. We remand for a new trial on the question of Conrad Malinak's

damages. We anticipate that Malinak may argue, on remand, that Spokane County will have sufficient time before a third trial to depose Dr. Charles Morrison and to hire a rebuttal expert such that the trial court may reinstate the claim for medical bills. Based on the history of the case, however, we direct the trial court to not allow a claim for medical bills. Any third trial will be limited to the amount of damages to award Conrad Malinak general damages resulting from the motorcycle accident. The prior jury determination as to the comparative fault of Conrad Malinak and Spokane County shall remain inviolate.

Spokane County may argue that this reviewing court should deduct the amount of the medical bills claimed by Conrad Malinak to the award granted him, award the difference to Malinak, and deny a new trial to Malinak. Some logic supports such a ruling since the trial court instructed the jury that Malinak incurred undisputed medical expenses of $21,395.58. Nevertheless, the jury entered a general verdict that did not distinguish special damages from general damages. The jury likely discounted the value of the medical bills since it awarded a general sum of $35,000. A jury rarely awards a sum that includes cents for pain and suffering.

We anticipate on remand a dispute as to whether Conrad Malinak may call an expert witness to testify to his treatment and care in order to help Malinak establish his pain and suffering. We direct the trial court to permit Conrad Malinak to employ a physician, whether Charles Morrison or another doctor, to testify to the injuries sustained

by Malinak during the motorcycle accident, provided Malinak timely discloses the expert by a date set by the trial court consistent with permitting Spokane County an opportunity to conduct discovery and hire a rebuttal expert witness to also testify at trial.

Because of our remand for a new trial, we do not address Spokane County's argument that the trial court abused its discretion when allowing testimony of Dr. Charles Morrison. We also do not address the county's contention that the trial court erroneously instructed the jury as to an undisputed amount of medical bills.

## CONCLUSION

We affirm all rulings of the trial court except for the reinstatement of Conrad Malinak's claim for special damages. We affirm the jury verdict and judgment in favor of Madelynn Tapken. We remand for another trial on Conrad Malinak's claim for general damages alone consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.

69